ABEL M. and EDWARD E. QUIMBY v. THOMAS J. SLOAN and
SAMUEL LEGGETT; and NEZIAH WRIGHT and ELIJAH F.
PURDY, assignees of SLOAN and LEGGETT.

Where, without fraud, the owner of a house and lot in the city of New York,
conveys them to trustees for the benefit of creditors; laborers, material men
and contractors, cannot, by afterwards filing notices under the sixth section
of the act of 1851, "for the better security of mechanics and others," acquire,
*under the statute*, any lien upon the premises, although the notices are filed
before the recording of the conveyance.

Nor do they acquire, *under the statute*, a lien as against the grantees.

Whether, upon any equitable principles, material men, either apart from the
statute or as an incident thereto, have a lien, as vendors or otherwise, for the
purchase money, which gives them priority over rights acquired by such
grantees, and which might be enforced in a court having general equitable
jurisdiction?  *Dub.*

If such equitable lien exists, its enforcement must be sought by filing a com-
plaint framed for the purpose, and it cannot be enforced by a decree made
in proceedings instituted under the statute in question. (a)

---

(a) See *Jackson* v. *Sloan, post,* p. 616, wherein this point is singly presented
and determined.

Nor could such equitable lien be enforced at all in the Marine Court.

The Marine Court has no equity jurisdiction, except such as this statute confers upon it. On a foreclosure of the lien given by the statute, it is thereby clothed with power to order the premises to be applied to the satisfaction of the lien; but it has no jurisdiction unless a lien is established *under the statute.*

In order to the acquisition of the statute lien, the statute itself must be strictly pursued.

Where such a deed contains a reservation, under which the grantor has a remaining equitable interest; whether such interest could be secured by a proceeding under this statute? *Quere.*

*It would seem*, that in construing the statute, the terms, "right, title, and interest," should be taken to mean *legal* right, title, and interest, and *not a mere equity.*

A fraudulent conveyance, made with intent to defeat the recovery of the claims, would, *it seems*, be undoubtedly set aside in an action prosecuted for that object.

The deed having been executed and delivered by the grantor, before the notice was filed, his right, title, and interest had effectually passed, and the claimant acquired no lien, notwithstanding the omission to record the deed until after the notice was filed.

But, *it seems*, that, had the foreclosure been instituted against the grantor—a judgment obtained—and a sale made to a *bona fide* purchaser under the judgment, who paid his money and received a deed; such purchaser without notice would hold title against these grantees, if his title was acquired before their deed was recorded.

The credit given for the price of materials which enter into the construction or repair of a building, is not founded upon the faith of a contemplated lien under this statute, in such a sense as to impart to the claimant a higher equity than that of persons to whom the contracting owner may convey the premises in trust for creditors, before a notice of lien is filed.

If *no lien* is established, *under this act*, a claimant cannot convert his proceeding into an ordinary action for the recovery of money upon a personal contract, and insist upon the defendant's personal liability, or recover in any form in such proceeding.

*It seems*, that those who attach fixtures to a house, designed for use in connection therewith, have, in the absence of fraud, no lien thereon, except such as the law of 1851 may confer for the value thereof.

Whether a person who attaches lightning rods to a building is one who furnishes materials, &c., within the meaning of the mechanics' lien law? *Quere.*

No judgment under this act can be awarded against the owner personally, where he is not personally liable by contract, to the claimant.

Accordingly, this court has heretofore held, that no personal judgment can be obtained against the owner where the claim is held by a sub-contractor.

Still less can such personal judgment be sustained against a grantee of the owner, who is a party to no contract with the claimant relating to the matter.

Quimby *v.* Sloan.

The proceeding, under this statute, is a proceeding *in rem*, and its primary object is to enforce the lien as such.

A judgment against the *owner*, should be a judgment against his right, title, and interest in the premises when the notice of lien was filed.

Whether, if the lien be established, and the owner be shown to be liable, personally, for the debt to the plaintiff, a decree over against the owner, may be made, to cover a deficiency? *Quere.* (*a*)

The amendatory act of April 13, 1855, provides, that when proceedings are commenced by a person having a claim against a contractor with the owner, the contractor may be made a co-defendant, and judgment be rendered against the latter for the amount found owing by him, in addition to the judgment directing the sale of the interest of the owner in the premises at the time the notice of lien was filed.   (See note *a, post,* p. 607.)

GENERAL TERM, JULY, 1855.

REVIEW of a proceeding under the mechanics' lien law.

Two of the defendants, being co-partners under the firm name of Sloan & Leggett, were joint owners of certain buildings in the city of New York, known as the Empire Works.   In November, 1854, they employed the claimants, who constituted the firm of A. M. Quimby & Son, to furnish and put up lightning rods, which the latter accordingly did, by inserting them eight or ten feet into the earth, and fastening them to the buildings by iron spikes driven into the walls.   The work was completed in December.

On the 9th of January, 1855, Sloan and Leggett executed, under their hands and seals, acknowledged before a commissioner of deeds, and delivered to the defendants, Wright and Purdy, a voluntary assignment of all their property, real and personal, in trust, for the benefit of their creditors. The assignees, at the same time, made a full acceptance of the deed and trust.

On the 11th of January, in the same year, the claimants, at fifty minutes after ten, A. M., filed, under § 6 of the act of July 11, 1851, a notice of lien for the value of the lightning rods and the labor in putting them up.   At forty minutes after twelve, M., on the same day, the deed of as-

---

(*a*) See *Althause* v. *Warren, post,* June Special Term, 1856.

signment was recorded with the register of the city of New York.

In due time, the notice, prescribed in the sixth section of the statute, was served upon the defendants, Sloan and Leggett, and upon Wright and Purdy, "assignees of Sloan and Leggett," requiring each of these four defendants to appear in the Marine Court, on the 23d of March, 1855, and submit to an accounting and settlement. The service was accompanied by a bill of the particulars of the demand.

On the return day of the notice, all the parties appeared and pleaded, in the court below. A stipulation was signed by their respective attorneys, embodying, substantially, the facts above stated, with some others relating to points not referred to on the appeal. A trial proceeded, and resulted in a judgment in favor of the claimants. No copy of the assignment was remitted to this court, and its provisions were not particularly disclosed, except as above given.

The judgment was certified in .the return of the justice, as follows: "Upon this statement of facts, after hearing the attorneys of the respective parties, I rendered judgment in favor of the plaintiffs, and against the defendants, Thomas J. Sloan and Samuel Leggett, and against the defendants, Wright and Purdy, as assignees of Sloan and Leggett, for the said sum, with costs."

The defendants, Sloan and Leggett, appealed to this court. A separate appeal was also prosecuted by the assignees. Both appeals were heard at the same time.

*Lorenzo B. Shepard,* for the defendants, Wright and Purdy, (the assignees,) made and argued the following points :

I. The complaint makes these defendants parties, as assignees, and therefore sets up and supports the assignment which—made and delivered before the filing of the lien— transferred the premises, free from the lien, absolutely to these defendants. (Burrill on Assts. p. 325; *Hendricks* v.

*Robinson*, 2 Johns. Ch. R. 307, 308 ; *Nicoll* v. *Mumford*, 4 Ib. 529.) Therefore, the complaint should be dismissed as to them, with costs. They are compelled to come into court, no notice of personal demand having been served on them; and yet, they are improper parties to this proceeding, which is a proceeding *in rem*, not as against the premises, but only as against and to the extent of the right, title and interest of the owner of the premises for whom the work was done or to whom the materials were furnished, at the time of filing. (2 R. S. 4th ed. p. 747, § 82.) Prior leinors are not necessary or proper parties. (*Kaylor* v. *O'Connor*, 1 E. D. Smith's C. P. R., 672; *Sullivan* v. *Decker*, Ib. 699.)

*John E. Parsons*, for the defendants, Sloan and Leggett, (the assignors,) made and argued the following points :

I. If the assignment of Sloan and Leggett had been recorded on the day of its date and execution, would it have defeated the operation of the plaintiffs' lien, filed subsequently thereto ; and if it would have so done, what was the effect of the omission to record until after the filing of the lien ?

1. In answer to the second question : (*a.*) An assignment made in good faith, for the benefit of, and not to hinder, delay or defraud creditors, is a conveyance divesting all the interest of the assignor, and entitled to all the privileges of every deed. (*b.*) Every deed takes effect, at common law, from the time of its delivery. (*Jackson* v. *Bard*, 4 Johns. 230 ; *Dickerson* v. *Tillinghast*, 4 Paige, 221.) (*c.*) And the only exception to this rule is that created by statute, (2 R. S. 4th ed.,) and that is only in favor of "subsequent purchasers, in good faith and for a valuable consideration," which the plaintiffs are not. The plaintiffs completed their work and furnished their materials long before the filing of the lien or the execution of the assignment, and gave no new consideration after that time for their lien. They might have protect-

ed themselves, but neglected to do so until too late, and now remain as any other personal creditor of the defendants, Sloan and Leggett, being, however, preferred for the amount of their debt in the assignment. " One who does not give a present consideration for a conveyance, is not a *bona fide* purchaser within the registry acts." (*Stuart* v. *Kissam*, 2 Barb. S. C. R. 493; Vide *Coddington* v. *Ray*, 20 Johns. 637, and cases there cited.) The statute does not save the rights of judgment creditors, whose judgments have been docketed before the record of the conveyance, (*Tuttle* v. *Jackson*, 6 Wend. 213; *Dickerson* v. *Tillinghast*, 4 Paige, 215; *Jackson* v. *Chamberlain*, 8 Wend. 625; *Jackson* v. *Town*, 15 Ib. 588; *Hooker* v. *Pierce*, 2 Hill, 613; *Raynor* v. *Wilson*, 6 Ib. 471,) even as against an assignment for the benefit of creditors, executed before but recorded after the docket of a judgment, (Burrill on Assignments, p. 272, and *Bush* v. *Waring*, 1 Bay, 190, there cited,) whose liens are entitled to equal if not greater favor than that of mere lienors, whose lien is preliminary to the establishment of any claim.

2. In answer to the first question : (*a.*) The statute only gives a lien upon premises to which any materials have been furnished or upon which any work has been done, to the extent of the right, title and interest *at the time of filing*, of the owner, with whom or whose contractor the agreement was made. (2 R. S. 4th ed. p. 747, § 82; *Sullivan* v. *Decker*, 1 E. D. Smith, 699; *Doughty* v. *Devlin*, Ib. 634.) (*b.*) Sloan and Leggett had no right, title or interest in these premises at the time of filing; they had, prior thereto, conveyed the said premises by an assignment. (*c.*) Which divested them as against all other persons, of all their right, title and interest therein. (Burrill on Assignments, p. 325; *Nicoll* v. *Mumford*, 4 Johns. Ch. R. 522; *Holmes* v. *Remson*, Ib. 486.)

II. The plaintiffs not having any lien, there must be a judgment for these defendants, for, (*a.*) This is not a proceeding to obtain a personal judgment. It is a proceeding for a special object, which fails, and the plaintiffs having shown

no lien, there is no foundation for the proceeding to foreclose. (*Beals* v. *Congregation B'nai Jeshurum,* 1 E. D. Smith, 654; *Cronkright* v. *Thomson,* Ib. 661; *Gridley* v. *Rowland,* Ib. 670.)

*Lyman Abbott,* (*Abbott Brothers,*) for the claimants, made and argued the following points:

I. Wright and Purdy were properly joined as defendants. (*a.*) This is a proceeding (*in rem*) to foreclose a lien upon the property. (*Cronkright* v. *Thomson,* 1 E. D. Smith, 661.) In this property, Wright and Purdy claim to have an interest which is necessarily adverse to the plaintiffs; they may, therefore, be made parties. (Code, § 118, made applicable to the Marine Court by § 64, sub. 15. See, also, Code, § 122, sub. 1. *Clarke* v. *Ratcliffe,* 7 How. Miss. R. 162; *Haggerty* v. *Palmer,* 6 Johns. C. R. 437.)

II. The assignment by Sloan and Leggett to Wright and Purdy is subject to the plaintiffs' right to file a notice of lien. A *bona fide* purchaser, within the meaning of the registry act, is one who parts with a present consideration for the land, or advances money, trusting for repayment to a security given him on the land; as opposed to one who takes the land in payment of a precedent debt, or to secure the payment of a precedent debt, not before sufficiently secured. (See *Stuyvesant* v. *Hall,* 2 Barb. Ch. R. 151, 158; *Truscott* v. *King,* 6 Barb. Sup. Ct. R. 346.) A *bona fide* purchaser is one who has "actually parted with his property on the credit of the estate, so as to give him an equitable claim *or specific lien* thereon." (*Dickerson* v. *Tillinghast,* 4 Paige, 215, 221.) Thus, mortgagees, who have advanced money on the credit of the land, are *bona fide purchasers.* (*In re Howe,* 1 Paige, 125, 128.) So are assignees of mortgagees. (2 R. S. 171, § 157, marg. 762, § 37.) Nor is it necessary that the value should be advanced at the time the lien is secured. A "present consideration" is a consideration advanced on the credit of the lien. Thus, a party loaning money on a

parol agreement for a mortgage, has a specific lien upon the land, good against an actual conveyance for the benefit of creditors. (*Simeon Stuart's Case*, quoted in *Burn* v. *Burn*, 3 Vesey, Jr., 576, 582 ; *Delaire* v. *Keehan*, 3 Dessausure's Eq. R. 74.) In this case the plaintiffs are clearly within the intent of the registry acts, as defined in *Dickerson* v. *Tillinghast*. They parted with their property trusting for a repayment, not to Sloan and Leggett personally, but to "*a specific lien*" upon the property, which the statute gave. The assignment not having been recorded at the time the plaintiffs' lien was filed, is, under the statute, void as against them. (2 R. S. 162, § 1, marg. p. 756.)

III. A mechanic's inchoate right of lien cannot be *defeated* by an assignment to trustees for the benefit of creditors. 1. The mechanics' lien is not governed by the rule which governs a judgment lien. It is a lien of the same nature as the common law lien, which every artisan has on materials in his possession for his labor bestowed upon them ; a lien more highly favored both in law and equity than any other known to the law. (2 Kent, 812, marg. 634 ; Cross on Lien, 24 ; *Jackson* v. *Cummins*, 5 Mees. & W. 342 ; *Houghton* v. *Mathews*, 3 Bos. & P., 492.) 2. The deed to Wright and Purdy is not an ordinary deed. They hold the property as trustees for the purpose of paying antecedent debts of Sloan and Leggett. They had full notice of our lien ; the very instrument under which they claim title acknowledges our claim, and they must have known our right of lien, for the buildings were not yet entirely completed when the assignment was made ; nor have they paid any consideration for the deed. As assignees, they hold subject to every equity good against the property in the hands of Sloan and Leggett. (Bac. Abr. Tit. Bankrupt; 7 Vin. Abr. p. 36, Tit. Creditor and Bankrupt R. 10 ; Ib. 73, R. 4 ; Sugden on Vendors, 364 ; Burrill on Assignments, 325 ; *Grant* v. *Mills*, 2 Ves. & Bea. 307 ; *Thompson* v. *Beatson*, 7 Moore, 548 ; *Mitford* v. *Mitford*, 9 Ves. 87, 100 ; *Addison* v. *Burckmeyer*, 4 Sand. C. R. 498, 501 ; *Waddington* v. *Vredenbergh*, 2 Johns. Cas.

227, 231 ; *Slade* v. *Van Vechter*, 11 Paige, 21, approved, *Ray* v. *Birdseye*, 5 Denio, 619 ; *Haggerty* v. *Palmer*, 6 Johns. C. R. 437 ; *Twelves* v. *Williams*, 3 Whart. 485.) In the latter case, Mr. Haggerty, on the 27th of May, 1822, sold at auction, to Palmer, a quantity of goods, to be paid for in approved endorsed notes, at four and six months. The goods were, according to the usage in New York, delivered to Palmer at the time of the sale, though the notes were not sent for until the first of June. When sent for, it was discovered that on the 30th or 31st of May, Palmer had stopped payment and assigned all his property, including these goods, to assignees, in trust, for the benefit of certain creditors. Haggerty sued Palmer, *joining the assignees*, and the court held that he had an equitable lien upon the goods, and a prior right to payment; and they decreed accordingly, although in that case the goods had been sold by the assignees, and the money was in their hands.

In *Twelves* v. *Williams*, 3 Wharton's R. 485, Williams had a mechanic's lien on certain buildings owned by Twelves, for lumber furnished to him in their erection. These buildings were sold on an execution against Twelves, issued on a judgment recovered previous to the filing of the lien, and were bought in by W. & L. Krumbhaar; they secretly agreeing, however, either to bid the property up sufficiently to satisfy the liens, or else to buy the property themselves and pay the liens. Shortly after, W. & L. Krumbhaar made a general assignment of their property, including the property in question, for the benefit of their creditors. Williams proceeded to foreclose his lien under the statute, and the court held, 1. That in the absence of any agreement to the contrary, the plaintiff's lien would have been discharged by the sheriff's sale. 2. But that, in consequence of the agreement between the Krumbhaars and Williams, the property stood in Krumbhaars' hands, and consequently in the hands of their assignees, subject to the plaintiff's lien. And they gave judgment for the plaintiff.

In *Langton* v. *Hall*, Vin. Abr. Tit. Cr. and Bank, vol. 7, K. 4, A., by articles, agreed to build certain houses. B. furnished *him* with materials, taking for security an assignment of the articles; but, *before the assignment*, A. was a bankrupt. Held, that B. had a prior equity which entitled him to payment, in full, of all the money he advanced after he had a specific interest in the articles.

In the present case Sloan and Leggett were building certain houses. A. M. Quimby and Son furnished them with materials, trusting for security upon a right of lien given them by the statute. Before that lien was perfected, but after the *inchoate right commenced*, Sloan and Leggett were bankrupts. A. M. Quimby and Son are entitled to a prior equity. The cases are precisely analogous.

The above cases show how strict the courts have been in enforcing the rule, that assignees in trust for creditors take subject to every equity good against the assignor or debtor; and how reluctant they have been to appropriate property in the possession of the debtor which has not been paid for, to the payment of his antecedent debts. The cases to which the appellants refer are all cases in which a deed or mortgage to a *bona fide* purchaser for a valuable consideration was held entitled to a preference over the lien of a judgment mortgage or *even deed* (4 Paige, 215) given as security for the payment of a precedent debt. The principle established by the cases which they quote is that one who has advanced value on the credit of a lien upon the land itself, is entitled to priority over a general creditor who has obtained a lien or even *an absolute title to the land*, merely as security for the payment of a precedent debt, or in payment of a precedent debt. Thus, though in form Wright and Purdy hold by purchase, and the plaintiffs by a simple lien, yet when the nature of their respective claims is analyzed, it is clear that it is the plaintiffs who are entitled to be protected as *bona fide* purchasers, while the assignees stand in the position of general creditors claiming security for antecedent debts.

IV. The rule contended for by the appellants would entirely defeat the mechanics' lien law. If the assignment in the present case defeats the plaintiffs' lien, then all that the owner of a building has to do, to protect it from liens, is, to assign it to some friend before the work is completed, (previous to which time the mechanics cannot file their notice,) and let the *title* so stand until six months from the completion of the work shall have elapsed. He need not take the trouble to find a purchaser; nor would it even be necessary that the assignee should pay, or pretend to pay, a consideration. Nor need the assignment even be put on record. Thus, the act might be easily and completely avoided, and by means which could not be called illegal or even fraudulent. The judgment appealed from should be affirmed, with costs.

*John E. Parsons* and *Lorenzo B. Shepard*, for all the defendants, in reply.

I. The statute gives no *inchoate right of lien* in the nature of a vested or equitable interest. The lien is complete on filing the notice. The right to file it is not an equitable incumbrance upon the land, nor does a purchaser take subject to it. The lien is created by statute, and the lienor cannot obtain more than the statute gives, and the statute expressly says that the claimant shall have a lien "upon filing" his notice, &c.; not before.

II. The lien in this case is the very reverse of a common law lien, which was lost the moment possession was parted with. In this case the claimants have surrendered their common law lien. They seek to avail themselves of the statutory lien, and they must be confined to its provisions. They do not claim their rods, but a lien on our land. This the common law could not give.

III. It does not appear that the defendants, Wright and Purdy, had notice of the plaintiffs' claim; in fact, they did not have notice other than of a personal debt. If the plain-

tiffs neglect to file, they do so at their peril. The right to file a lien is not an equity good against the property, and subject to which the defendants, Wright and Purdy, would take. (*Haggerty* v. *Palmer*, 6 Johns. C. R. 437.) This case went upon the ground that the delivery was conditional, and that, therefore, no title had passed to Palmer. It decides merely that Haggerty, never having fully parted with the possession of the goods, was absolutely entitled to them; and the chancellor says, that " if the goods had been fairly sold by Palmer, or if the proceeds had been actually appropriated by the assignees before notice of this suit and of the injunction, the remedy would have been gone." (*Langton* v. *Hall*, Vin. Ab.) In this case the articles were not attached to the freehold, and the claimant had a specific assignment of them to himself. The court then very justly protected him as to all sums advanced after the assignment, upon the faith of which they were advanced.

IV. The cases, *Delaire* v. *Keehan*, 3 Dessausure, 74; *Simeon Stuart's Case*, and the case in 1 Paige, 125, are sufficiently answered by the words of the statute, which expressly state that the lien does not bind the land, but merely the right, title and interest of the owner at the time of filing.

V. The case of *Twelves* v. *Williams*, (3 Wharton's R. 485,) would seem to be in point, and undoubtedly would be so, had it been decided under our act. It was, however, decided under the Pennsylvania act, which is essentially different in the very point in question, giving an absolute lien upon the property, and not merely upon the interest of the owner at the time of filing the notice. The following are the material sections of the act: § 1. "Every building erected within the several counties, &c., shall be subject to a lien, for the payment of all debts contracted for work done or materials furnished for or about the erection or construction of the same." § 10. "The lien shall be preferred to every other lien or incumbrance which attached subsequent to the commencement of the building." § 14. "Every such debt shall be a lien

until the expiration of six months after the work is done, &c., *though no claim shall have been filed.*"

[1] BY THE COURT.    WOODRUFF, J.—The proceeding in this case, in the Marine Court, was had under the mechanics' lien law of 1851, and was instituted to foreclose an alleged lien upon certain buildings erected by the defendants, Sloan and Leggett, to which the plaintiffs have attached lightning rods, inserted some eight or ten feet into the ground, and fastened to the buildings by iron spikes.    After the rods were attached, and before the notice prescribed by the statute was filed with the county clerk, the owners, Sloan and Leggett, conveyed the buildings and lots of ground to the defendants, Wright and Purdy, in trust for creditors, by deed, duly executed, acknowledged and delivered, but such deed was not placed upon record until about two hours after the plaintiffs filed their notice to create a lien.    The grantees, Wright and Purdy, are made parties defendant, and on the trial below, the court rendered judgment against all of the defendants, for the sum of $62 87, the amount claimed, with costs.

Unless we are satisfied that the views we have heretofore entertained of the proper construction of the law under which this proceeding was taken, and of the nature of the proceeding itself, are wholly erroneous, and that most of the decisions we have made since the law was enacted are wrong, we cannot sustain this judgment.

I. The defendants, Wright and Purdy, are in no sense legally or equitably debtors to these plaintiffs.    Whether the property conveyed to them was liable to be affected by this alleged lien or not, they did not, by accepting the conveyance, become personally liable for the debt, and there is nothing in the statute, nor in any view of the equities of the parties, to countenance such an idea.    The statute in terms applies, and only applies to cases in which the building is erected under a *contract* with the owner, and it is as an *owner contracting* that he or his property can be subjected

Quimby *v.* Sloan.

to the proceedings ;. and we have held heretofore, and are still of opinion, that where the owner is not personally liable, by contract, to the plaintiff himself—as where the claim is by a sub-contractor—no judgment can be ordered against the owner personally ; still less can such judgment be sustained against a grantee of the owner, who is a party to no contract with the plaintiffs relating to the matter.

II. Even as against the defendants, Sloan and Leggett, the judgment (if the plaintiffs showed themselves entitled to any judgment) should have been against their right, title and interest in the premises at the time when the notice of lien was filed. That was precisely what was bound by the lien, which it was the purpose of this proceeding to foreclose. The proceeding is a proceeding *in rem*, and its primary object is to enforce the lien as such. Whether, if the lien be. established, and the defendants be shown to be liable personally for the debt to the plaintiffs, a decree over may be made to cover a deficiency, it is not necessary to decide. (*a*) Such does not appear, by the return, to have been the judgment in this case. (*b*)

---

(*a*) NOTE BY REPORTER.—The fifth section of the act of April 13, 1855, amendatory of the statute of July 11, 1851, provides, that "when the proceedings are commenced by a person having a claim against a contractor with the owner, such contractor may be made a defendant with such owner, and judgment may be rendered against the contractor for the amount which shall be found owing by him, in addition to the judgment hereinbefore provided for against such owner, and the court may award costs against such of the parties as shall be just." The first section of the same (amendatory) act is as follows : "Whenever judgment shall be rendered in favor of the claimant, in any proceeding commenced under the act hereby amended, such judgment shall direct the sale of the interest of the owner in the land and premises upon which the lien exists, to the extent of the right of such owner at the time of the filing of the notice of lien in pursuance of said act, and that the proceeds of such sale shall be applied to the payment of the costs of the proceeding, and of the amount found to be due to such claimant, and that the residue of such proceeds be paid to the clerk of the city and county of New York, to abide the further order of the court." (Laws of 1855, chap. 404, p. 760.)

(*b*) The exact words employed by the justice in certifying his award of judgment, are quoted in the statement of the facts of the case, *ante*, p. 596.—REP.

III. The question chiefly discussed, however, is whether the plaintiffs had in fact any lien to foreclose; and this question, in its application to the present case, divides itself into two questions:

1st. Whether the plaintiffs had any lien upon which they could proceed in the Marine Court for a foreclosure, or to compel the application of the property bound thereby to its payment; for if not, then that court had no jurisdiction of the subject matter, and could render no judgment in the plaintiffs' favor.

2d. Whether, upon any equitable principles, the plaintiffs had a lien, as vendors, for the purchase money, which gave them priority over the rights acquired by Wright and Purdy, grantees under the deed above mentioned, and which might have been enforced in a court having general equity jurisdiction, and on a complaint framed for the purpose of establishing such an equitable lien.

Although this latter question has been discussed at some length by the counsel for the respondent, I do not think it necessary to the determination of this appeal. The action here is a statutory action, and though equitable in its nature, it is founded solely on the statute, and seeks the enforcement of rights given by statute. Some considerations connected with this branch of the inquiry may, however, be suggested in what follows:

First, then, Did the plaintiffs establish a lien which could be foreclosed in the Marine Court? I feel constrained to answer this question in the negative. That court has no jurisdiction to enforce *equitable* liens. It has no equity jurisdiction except such as this very statute confers upon it. Actions to recover or enforce claims to real property, or a right or title or interest therein, legal or equitable, must be brought in other courts. The statute in question has given the Marine Court jurisdiction in specific cases under that statute, and we have held, and are still of opinion, that this clothed that court with all the jurisdiction necessary to carry the provisions of this statute into full effect, and on a foreclosure of the lien

given by the statute, to order the premises to be applied to the satisfaction of the lien.

But the plaintiff, in order to obtain such a judgment in that court, must establish a *lien under the statute*, for it is that lien, and that only, which can be enforced in that court. All that counsel have urged in regard to a vendor's lien for purchase money, or the lien of a material man upon the structure into which his materials have entered, founded in the general principles of equity, may be laid out of view. That is not a lien of which the Marine Court can take jurisdiction for the purpose of enforcing it. The question is, therefore, had the plaintiffs a lien upon the premises under the statute? If not, the action must fail altogether, for the proceeding, being a statutory proceeding, is based on an alleged lien. That is the very foundation upon which the plaintiffs must stand in court, and we have repeatedly held that *if no lien is es*-tablished, there can be no recovery in any form under this proceeding. Having called the defendant into court in a peculiar mode prescribed by statute, for a particular purpose, only applicable to a specified claim, if the lien fails, the plaintiff cannot convert his proceeding into an ordinary action for the recovery of money upon a personal-contract, and insist upon the defendant's personal liability.

We have so often expressed our views of the essential requisites of the statutory lien, that it is unnecessary to enlarge upon them here. The statute gives to the material man a lien *upon filing* the notice with the county clerk, prescribed in the sixth section of the act. It is then, *and not until then*, the lien is acquired. And to make this act the very creation of the lien, by terms that should be so specific that no doubt could exist on the subject, the effect of filing such notice is stated to be that the claimant shall *have* a lien upon the right, title and interest of such owner, *existing at the time of such filing*. As if the legislature not only intended that the statute lien should not only take effect from that time, but also to exclude the idea of the party's "*having*" any legal or equitable lien before such filing. Clearly here is no

" *inchoate lien*" given by the statute, to operate from the
time when the materials are furnished, and unless it exists
by force of the statute, and may be enforced under and in
the mode pointed out by the statute, then this action cannot
be sustained upon the ground that any such "inchoate lien"
existed.   Indeed, I should be very reluctant to say that, in
any case, in any court, (where no fraud is alleged to have
been contrived by the parties to prevent a lien, which might
become the ground of relief in equity under a distinct head
of equity jurisdiction,) when a statute has prescribed a par-
ticular mode of obtaining a lien for materials, and how it
shall be acquired, and from what time it shall take effect,
the party may, upon any general view of his equities, claim
a lien from an .earlier moment, and upon interests which the
statute has not declared shall be bound thereby.   If it was
equitable that the material man should have a lien upon the
building into which his materials had entered, from the time
he parted with those materials, were not the legislature suf-
ficiently conscious of this equity?   They were, it is to be pre-
sumed, fully aware of all the considerations which have led
courts of equity to sustain liens for purchase money and the
like, and it would have been quite easy to say that such liens
shall exist from the time the materials were used, had they
intended any such result, and yet they fix the time when the
lien shall take effect.   This, to my mind, excludes any claim
to what counsel call an inchoate lien, to operate at any earlier
period.   And, as before remarked, it is the actual lien—the
statute lien—the commencement of which is fixed by statute,
with which alone we have any thing to do in this action.
Besides, I apprehend, if any thing in the nature of a lien is
to be accorded to the material man, upon the general princi-
ples of equity, as recognized in the cases of vendor and pur-
chaser—ship-builders and   mechanics   adding   labor and
materials to personal property—or those claiming under an
equitable charge upon an estate, such as are cited by the
respondent's counsel, that lien would be confined to the
*building itself* into which the materials have entered.   The

lot of ground would not, as it is under the statute, be bound thereby.

But to return : in order to the acquisition of the statute lien the statute itself must be strictly pursued, and there is in this no inequity. The plaintiff claims the benefit of a right not existing at the common law. He claims the benefit of a summary proceeding for the enforcement of that right. He has his own option at any time within six months to secure himself by filing his notice. If he allows the time to pass until the owner has sold the property, he cannot complain ; he still has his action for the debt. He only fails by his own delay to secure the benefits of the statute. When fraudulent transfers are made to cheat contractors or material men, as intimated by counsel, there will be time to consider their effect in an action in the appropriate court, and in a proper action, to set aside the fraudulent conveyance, so far as it operates to defeat the lien.

Under these views, how stands the present case? On the eleventh day of January, 1855, the plaintiffs filed their notice. If the contracting owner had then any right, title or interest in the building, and lot whereon the same was erected, the plaintiffs acquired a lien thereon upon that filing, assuming, of course, for the purpose of that remark, that one who attaches lightning rods to a building is one " who performs work and labor, or furnishes materials in *building the house or other building,* within the meaning of the stat ute, a question not raised by the counsel on this appeal. (*a*) (*McDermott* v. *Palmer*, 4 Selden, 383.)

---

(*a*) The inquiry, " for what services and materials a lien may be acquired," is ably discussed in Norr's treatise on the lien laws, p. 97, as follows:

" The only case, under all of the lien statutes, where an objection has been taken to the lien on this ground, was the case of *McDermott* v. *Palmer*, which arose under the act of 1830, and has recently been decided by the Court of Appeals. (4 Seld. R. 383.) When that case was before the Supreme Court, (11 Barb. S. C. R. p. 9,) the right of the parties to recover for such services was not questioned ; and the case was decided upon entirely distinct grounds, while, when before the Court of Appeals, this was the only question considered by that

Before that day the contracting owners had conveyed the property to third persons, in trust for creditors. Their title

---

court. "The services referred to were for 'flagging the sidewalks, yards and areas' of certain houses in the city of New York. "It does not appear, by either report, what the precise nature of the claim was; but, in the opinion delivered in the Supreme Court, it appears that there was a contract for the erection of thirteen houses, and that this lien was for a part of the work included in the contract. "Whether any thing else was included in the claim than the work for flagging, &c., cannot be ascertained from the reports.

"The lien law of 1830 differs from the present law, and from the law of 1844, in applying only to work performed 'towards the erection, construction or finishing of any building,' while the two latter acts apply to work performed 'in building, altering or repairing any house or other building, or *appurtenances* to any house or other building.' "Accordingly, the Court of Appeals held, that under the act of 1830, the claimant could not recover for flagging the sidewalks, yards and areas; but Mr. J. Taggart, who delivered the opinion of the court, in speaking of the law of 1844, which uses precisely the same language as that of 1851, says: 'The term 'appurtenances' may, perhaps, include, without any forced construction, the yard and sidewalk; and work and labor performed, and materials furnished for such appurtenances, are probably within the spirit of the statute.'

"This term 'appurtenances' is said by Jacobs, (Law Dic.,) to 'signify things both corporeal and incorporeal, appertaining to another thing as principal, as hamlets to a chief manor;' and 'outhouses, yards, orchards and gardens are appurtenant to a messuage.' "By the Supreme Court of the United States, it has been said, in *Harris et al.* v. *Elliott*, (10 Peters, p. 54,) 'this term, both in common parlance and in legal acceptation, is used to signify something appertaining to another thing as principal, and which passes as an incident to the principal thing.'

"Besides questions arising in regard to the place where the work is performed, others may arise with respect to the character of the work itself. "I find but two cases where such could have arisen; and in both it appears to have been assumed, or rather not to have been questioned, that a recovery could be had. "The first of these was the case of *Dixon* v. *La Farge*, (1 E. D. Smith's R. 722,) in which 'the claim was for furnishing to the contractor hoisting apparatus, and labor in the use of it, upon the erection of the defendant's building.' "The second case was that of *Quimby* v. *Sloan* (decided at the general term of the Common Pleas, July 28, 1855); and here the claim was for attaching lightning rods. "A safe rule, and indeed a natural test, would be to consider, as a part of the building, whatever would, at common law, be considered a fixture, and not severable from the freehold. "It may also be, that greater favor would be shown to those things, which, being questionable in themselves, are included in a building contract; and what would at one time

was gone. There was nothing in them to which the lien could attach. The return does not show that there was in them even the hope of a surplus of proceeds after paying creditors, or that the conveyance was not absolute in all respects as to them, or show that the conveyance, although in trust, was not upon valuable consideration, though in trust for creditors as beneficiaries under the conveyance. Had it appeared that there was a reservation in the deed under which the grantors had a remaining equitable interest which could be bound by the statute, possibly it might be secured in this mode; but even that is questionable, when the whole legal title is gone; and if, as seems to be assumed in argument, the plaintiffs are themselves provided for as creditors in the deed itself, then they will obtain satisfaction if the property is adequate; and as to *them* there can be no such residuary interest until their whole claim is paid. I incline to the opinion that the terms *right, title and interest*, in the statute, are to be taken construing the statute to mean *legal right, title and interest*, and not a mere equity. But it is not necessary to pass upon that question, for it cannot avail any thing to the plaintiffs in this cause.

My conclusion is, therefore, under this branch of the inquiry, that the plaintiffs acquired no lien under the statute. They delayed too long the filing of their notice. The fact

---

be considered a part of the house or its appurtenances, would at another be deemed the pavement of a public street. "And this is not wholly fanciful nor merely specious, for it would be but conforming to the ordinary opinions and practice of those for whose protection the lien law was enacted."

It is stated by the Messrs. Abbott, the plaintiffs' attorneys in this cause, in their valuable reports of practice cases, that "the counsel on both sides considered that the rods in question, being fastened to the building by iron spikes, &c., were clearly embraced within the term 'appurtenances,' in the act of 1844, repeated in the act of 1851, under which this action was brought."

Compare the language of the first section in each of the three acts—1. Session Laws of 1830, chap. 330, p. 412; (This law, as originally enacted, applied exclusively to *labor*, but was amended so as also to include *materials*, by the act of 1832, chap. 120, p. 181;) 2. Session Laws of 1844, chap. 220, p. 339; and 3. Session Laws of 1851, chap. 513, p, 953, 2 R. S., 4th ed., p. 747, § 82.

that the deed was not recorded until two hours afterwards, does not alter the case. The plaintiffs acquired no lien while the owners had any right, title or interest. That had passed to the grantees, and passed effectually, whether the deed was recorded or not. Had the foreclosure been instituted against the owners, a judgment been had, and a sale been made to a *bona fide* purchaser under the judgment, who paid his money and received his deed, then the recording acts would have been material, and such a purchaser without notice would, I think, have held title against these grantees, if his title was acquired before their deed was recorded. But here no such question arises, and, as between these parties, the deed was effectual to pass the owners' right, title and interest, whether recorded or not.

SECONDLY.—Much that I have above said bears upon the inquiry, whether the proceedings might be sustained upon the facts before us as an equitable lien, either apart from the statute or considered as an incident to the statute, in a court of general equity jurisdiction. We are referred to cases in which an artisan has a lien upon a specific chattel entrusted to him for repairs, or upon a chattel manufactured by himself, and other like cases in which a lien upon personal property exists, so long as the mechanic retains the possession of the chattel itself and no longer; and to cases in which the vendee of real estate is treated to the extent of the unpaid purchase money as trustee for the vendor, and the land charged with the payment, and although there may be found cases in which a court of equity, in marshalling assets, has recognized the builder of a house for a bankrupt as having a higher equity, and therefore entitled to a preference over creditors at large. I apprehend that no case can be found in which, upon the mere fact that they had contributed labor or furnished materials towards a building, a court of equity have admitted the laborers and various contributors to the erection to a lien thereon and on the lot whereon it stands, for the payment of the respective sums due to them. If there be such cases, they proceed

upon the ground of the insolvency of the owner, or fraud or other ground for equitable interposition, which is not the frame or ground of the present proceeding.

Besides, if the plaintiff relies upon a lien of this nature, there is no warrant whatever for extending it beyond the very article which he furnished, so long as that remains entire, capable of distinct identification and separation. Even if the statute brings the plaintiff within its purview, his equities, if any, apart from the statute, would be satisfied by giving him a lien upon the fixture he has attached to the building. I apprehend, however, as before suggested, that those who attach the various fixtures to a house designed for use in connection therewith, such as lightning rods, ranges and the like, have, in the absence of fraud, no such lien, unless it be found in the statute itself.

But, without pursuing the inquiry when or how far courts of equity will, upon grounds of peculiar equity cognizance, recognize and enforce the lien of mechanics, I am clear that no such ground will avail to sustain a purely statutory proceeding founded alone on the lien given by the statute itself.

I cannot admit the force of the suggestion that the credit is given upon the faith of the contemplated lien in such a sense as to give to the plaintiffs any higher equity. If he contemplated the lien when he delivered or furnished his work and materials, he contemplated taking the proper steps to acquire it, and within the proper time, and without such delay as might prevent his acquiring it at all; *i. e.*, he contemplated just such a condition of things and just such a lien as the statute provided for, and no other.

In my opinion the judgment must be *reversed.* It might, perhaps, have been enough to say that if these plaintiffs claim a lien under the statute, they have failed to gain a lien according to its provisions; and if they claim a lien upon equitable grounds existing independently of the statute, if any such exist, they have not selected the court nor the mode of proceeding in which such a claim can be enforced.

Judgment reversed.